UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL D. CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1253 (RMC) |
| | ) | |
| CRISTIAN SAMPER,[1] | ) | |
| Acting Secretary, | ) | |
| Smithsonian Institution, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Two questions are presented by the parties' pending motions in this case, in which Plaintiff Michael E. Cross sues his employer, the Smithsonian Institution, for alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and alleged violations of his constitutional rights under the First and Fifth Amendments to the United States Constitution. At a hearing with the parties on June 26, 2007, the Court indicated an initial predisposition to dismiss the constitutional claims as moot inasmuch as Mr. Cross is already reinstated and entitled to full back pay based on his victory in a whistleblowing lawsuit before the Merit Systems Protection Board ("MSPB"). *See* Def.'s Report Regarding Status of MSPB Proceeding [Dkt. #57].[2] Mr. Cross has filed a brief arguing that the constitutional claims are not

---

[1] Acting Secretary Cristian Samper has been substituted for former Secretary of the Smithsonian Lawrence M. Small. *See* Fed. R. Civ. P. 25(d).

[2] On May 9, 2007, the MSPB denied the Smithsonian Institution's petition for review of the administrative judge's initial decision issued September 7, 2006, and ordered the Smithsonian to cancel its termination of Mr. Cross and reinstate him to his position of GS-9 museum specialist

moot, which the Smithsonian opposes. *See* Pl.'s Resp. to Show Cause Order Regarding Constitutional Claims [Dkt. #64] ("Pl.'s Mem."). In addition, the Smithsonian moves to reduce any Title VII compensatory damages by the introduction of after-acquired evidence, which Mr. Cross opposes. *See* Def.'s Mot. to Reduce Title VII Compensatory Damages by the Introduction of After-Acquired Evidence [Dkt. #63] ("Def.'s Mem.").

The Court concludes that Title VII and the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, *et. seq.*, provide comprehensive and exclusive schemes for the redress of employment disputes by federal employees. Therefore, the constitutional claims must be dismissed. The Court is persuaded by the Fourth Circuit's decision in *Russell v. Microdyne Corp.*, 65 F.3d 1229 (4th Cir. 1995), that the Smithsonian must be allowed to attempt to prove that the after-acquired evidence would have led to Mr. Cross's termination, had it been known earlier. If the proof is satisfactory, the period for which Mr. Cross might receive compensatory damages will be reduced.

## I. BACKGROUND FACTS

Plaintiff Michael Cross was hired as a Museum Specialist with the National Air and Space Museum at its Paul E. Garber Preservation, Restoration, and Storage Facility on April 23, 2001. Am. Comp. ¶ 9. He was terminated on April 12, 2002, about two weeks before his one-year probationary period would have ended. Am. Comp. ¶ 24. Claiming that he was fired in retaliation for protected Equal Employment Opportunity ("EEO") activity under Title VII, and that his constitutional rights were violated, Mr. Cross sued his employer, naming former Secretary of the

---

within 20 days. The Board also ordered the Smithsonian to pay Mr. Cross back pay and interest on back pay within 60 days. *See* Def.'s Report Regarding Status of MSPB Proceeding ¶ 4 & attached May 9, 2007 MSPB Final Order at 2-3.

Smithsonian, Lawrence M. Small, in his official capacity.[3] Mr. Cross also filed a claim before the MSPB, asserting that he was fired because of whistleblowing activity.

The Smithsonian filed a motion to dismiss or for summary judgment on Counts 1-3 of the Amended Complaint, which alleged a retaliatory hostile working environment, retaliatory discharge, and retaliatory negative references. *See* Def.'s Mot. for Summary Judgment [Dkt. #9]. By decision dated September 29, 2006, the Court granted the motion in part and denied in part, dismissing the hostile work environment and retaliatory negative references claims and retaining the retaliatory discharge claim. *See* September 29, 2006 Memorandum Opinion ("Mem. Op.") [Dkt. #46]. The Smithsonian had also sought dismissal of Counts 4 and 5, alleging constitutional violations, on which the Court deferred, directing that Mr. Cross file a brief in opposition. *See* Mem. Op. at 31.

In the meantime, on September 7, 2006, an administrative judge of the MSPB had issued an initial decision that granted Mr. Cross's request for corrective action, including reinstatement and back pay, finding that the Smithsonian discharged him because of whistleblowing activities. The Smithsonian appealed the administrative judge's decision and it was sustained in a Final Order issued by the MSPB on May 9, 2007.[4] *See supra* note 2. With those remedies already granted, the only remaining potential Title VII remedy for Mr. Cross is compensatory damages. He

---

[3] Cristian Samper, Acting Secretary, has been substituted for Mr. Small, who has left the Smithsonian. *See supra* note 1.

[4] This case was held, pending disposition of the Smithsonian's appeal.

asserts that his constitutional claims survive because he has a claim for declaratory relief and, if he obtains such relief, he will be entitled to attorney's fees under 42 U.S.C. § 1988.  *See* Pl.'s Mem. at 1 n.1.

## II. ANALYSIS

### A. Constitutional Claims

Mr. Cross argues that his constitutional claims are not moot because he can still get a declaration of his rights and attorney's fees.[5]

After studying the competing arguments, the Court concludes that the comprehensive and exclusive schemes of the CSRA and Title VII bar Mr. Cross's constitutional claims.  Each of Mr. Cross's communications that he asserts were protected by the Constitution arose in the context of his employment: he was complaining about alleged sexual harassment and supervisory misconduct.  Title VII is the "exclusive and pre-emptive" remedy available to federal employees asserting claims related to EEO protected activity or statements.  *Brown v. Gen. Services Admin.*, 425 U.S. 820, 829 (1976).  Any of Mr. Cross's statements that address issues and rights arising under Title VII cannot, therefore, sustain his constitutional claims.  He has reluctantly admitted as much. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss, or in the Alternative, for Sum. J., as to Counts 4 and 5 of the Am. Compl. at 6 [Dkt. #50].

Despite the fact that the Amended Complaint describes every one of Mr. Cross's activities as "protected EEO activity," Am. Compl. ¶¶ 14-20, he now asserts that other statements, not otherwise EEO activity, support his constitutional counts.  The Supreme Court has addressed this

---

[5] Mr. Cross offers to file an amended complaint to rest on the Declaratory Judgment Act if the Court believes it necessary.  He recognizes that a claim for attorney's fees cannot, by itself, make a moot case viable.  *See* Pl.'s Mem. at 2 n. 2.

variation in *Bush v. Lucas*, 462 U.S. 367, 389-90 (1983), holding that the CSRA provides comprehensive and substantive protection to a federal employee asserting a claim of a constitutional violation, such as retaliation for engaging in speech protected by the First Amendment, and therefore bars any separate civil action. *See also Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 48 (D.D.C. 2005) (CSRA provided recourse for alleged First Amendment violation).

Mr. Cross argues that the CSRA cannot bar his constitutional claims because, as a probationary employee, he was not eligible to file a complaint under the CSRA. Supreme Court and D.C. Circuit jurisprudence caution otherwise. *Bush v. Lucas* relied on the CSRA to bar *Bivens*[6] complaints by federal employees even in cases where there would be "'no remedy whatsoever for short suspensions or for adverse personnel actions against probationary employees.'" *Spagnola v. Mathis*, 859 F.2d 223, 228 n. 8 (*quoting Bush v. Lucas*, 462 U.S. at 385 n.28). The fact that Mr. Cross cannot end-run the CSRA and advance constitutional claims in court is no injustice. First, Congress specifically barred probationary employees from appealing adverse personnel actions to the MSPB. Second, the CSRA establishes a comprehensive scheme for handling personnel disputes arising in the federal sector and its choices of remedies (or no remedies) must be respected by the courts. Third, Mr. Cross's actions at issue here all entailed workplace issues: in fact, he has to strain mightily to identify anything in his email to former Secretary Small that was not either protected activity under Title VII or whistleblowing. In fact, Mr. Cross filed a whistleblower complaint and MSPB ordered him reinstated with backpay. This is just not a case in which the Court needs to constitutionalize the workplace to afford a remedy to a beleaguered employee.

---

[6] *See Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971) (holding that the Constitution permits a private cause of action for damages against a federal official).

*Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984), on which Mr. Cross relies, does not suggest a different result. The employee in *Clark* alleged that he was harassed because he was a member of a specific political organization, not because of any activity covered by the EEO statutes or the CSRA. The *Clark* plaintiff had recourse to no other remedial scheme, which is a completely different fact pattern than the one here.

Congress chose a comprehensive scheme to regulate the federal workplace in the CSRA, Title VII and other similar statutes. These alternative schemes bar the constitutional claims here, even if it is assumed that there was a constitutional violation which would not otherwise be fully remedied.

### B. After-acquired Evidence

Approximately eight months after Mr. Cross was terminated, the Smithsonian discovered evidence allegedly proving that Mr. Cross repeatedly made false or deceptive statements in his application and appointment papers for employment with the Smithsonian, as well as in 1983 when he obtained a federal job with the Department of the Interior using a false name and identification. *See* Def.'s Mem. at 1. The Smithsonian alleges that Mr. Cross was an escaped convict from a Virginia State penitentiary in 1983. *See id*. at 1-2. The Smithsonian contends that this conduct, had it been known, would have (1) precluded the Smithsonian from hiring Mr. Cross *ab initio*; and (2) would have resulted in his termination upon its discovery, were he still employed. *See id*. at 2. The Smithsonian seeks to use this after-acquired evidence to reduce the time period for which Mr. Cross might be awarded compensatory damages should he prove that he was retaliated against for protected EEO activity. Mr. Cross admits to no "'dishonest and criminal conduct'" that would justify any adverse action against him. *See* Pl.'s Opp'n to Def.'s Mot. to Reduce Title VII

Compensatory Damages by the Introduction of After Acquired Evidence ("Pl.'s Evidence Opp'n") at 1-2 n.1.  Plaintiff notes that he has never had the opportunity to conduct thorough discovery on whether: "1) the Smithsonian was unaware of the misconduct when Mr. Cross was discharged; 2) the misconduct would have justified discharge; and 3) the Smithsonian would indeed have discharged [Mr. Cross], had [it] known of the misconduct."  *Id.*(citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995)).

The question before the Court is not whether Mr. Cross engaged in conduct that would have precluded his hire or prompted his discharge.  It is the more limited question of whether the Smithsonian will be allowed to present such evidence if, absent settlement, this truncated Title VII case goes to trial on compensatory damages.  Mr. Cross argues that the after-acquired evidence doctrine only impacts equitable remedies – such as backpay and reinstatement – and that the Court has no authority to limit legal remedies, such as compensatory damages.

The Supreme Court addressed the legitimacy of after-acquired evidence in *McKennon*, which was an age discrimination lawsuit where the employer learned during discovery that the plaintiff/employee had removed confidential documents from the office.  *Id.* at 355.  The lower courts held that this misconduct was grounds for termination and constituted a complete bar to all remedies under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  *See id*.  The Supreme Court noted that evidence of the misconduct did not come to light until after Ms. McKennon was fired; it assumed the complaint allegations were true and that she was fired due to her age.  *Id.* at 359-60.  Therefore, "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."  *Id.* at 360.  Therefore, "[i]n giving effect to the ADEA, we must recognize the duality

between the legitimate interests of the employer and the important claims of the employee who invokes the national employment policy mandated by the Act." *Id.* at 361.

In balancing these twin interests, the Court held that the "proper boundaries of remedial relief in the general class of cases" would preclude reinstatement and front pay. *Id.* at 361-62. Back pay should be calculated "from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 362. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362-63.

*Russell v. Microdyne Corp.*, 65 F.3d 1229 (4th Cir. 1995), directly addressed the question posed by the Smithsonian's motion: does the analysis in *McKennon* apply to compensatory damages. In *Microdyne*, Marie Russell filed suit alleging sex discrimination and, relying on misrepresentations in Ms. Russell's resume and application for employment, which it learned during discovery, Microdyne filed a successful motion for summary judgment. The Fourth Circuit reversed because there was contradictory evidence as to whether the information was newly-acquired, which could not be resolved on summary judgment. *Id.* at 1240. However, it clearly held that any recovery by Ms. Russell would be limited to the period between the alleged discrimination and the date on which the new information was discovered, whether that recovery be in terms of backpay for discriminatory failure to promote or compensatory or punitive damages. *Id.* at 1241.

*Microdyne* is entirely consistent with *McKennon*. The ADEA provides that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment,

reinstatement or promotion, or enforcing the liability for [amounts owing to a person as a result of a violation of this chapter.]" *See* 29 U.S.C. § 626(b). The Supreme Court's discussion noted certain specific remedies which would not be available because of the after-acquired evidence of employee misconduct, such as reinstatement and front pay. Back pay, however, could be required for the period between the employer's discriminatory action and the discovery of the earlier misconduct in order to fulfill the goals of the statute to eradicate age discrimination.[7] There is no basis under the Court's rationale to treat compensatory or punitive damages differently.

> The employee's wrongdoing must be taken into account . . . lest the employer's legitimate concerns be ignored. The ADEA, like Title VII, is not a general regulation of the workplace but a law which prohibits discrimination. The statute does not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees. In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern "for the relative moral worth of the parties," but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

*McKennon*, 513 U.S. at 361. If proven wrongdoing by Mr. Cross did not limit the period for which

---

[7] The policy choice made by the Court – to require some forms of remedy even when prior employee misconduct has been discovered – was designed to further the goals of the ADEA and would apply, *in haec verba*, to any employment discrimination claim:

> The objectives of the ADEA are furthered when even a single employee establishes that an employer has discriminated against him or her. The disclosure through litigation of incidents or practices that violate national policies respecting nondiscrimination in the work force is itself important, for the occurrence of violations may disclose patterns of noncompliance resulting from a misappreciation of the Act's operation or entrenched resistance to its commands, either of which can be of industry-wide significance. The efficacy of its enforcement mechanisms becomes one measure of the success of the Act.

*McKennon*, 513 U.S. at 358-59.

he could be considered for compensatory damages, he would receive an inequitable windfall. Such a result would be contrary to the teachings of *McKennon*.

The Smithsonian styled its motion as one to "reduce Title VII compensatory damages by the introduction of after-acquired evidence." The Court will grant the motion to the extent that it will allow the Smithsonian to introduce its after-acquired evidence and to argue to the jury that any compensatory damages to Mr. Cross should be limited. The Court will also give an instruction to the jury on the point, to be drafted with the parties' input prior to trial.

### III.  CONCLUSION

For the reasons stated, the Court will dismiss Plaintiff's constitutional claims in Counts 4 and 5 as barred by Title VII and the CSRA. It will grant Defendant's motion to present after-acquired evidence to reduce any compensatory damages that may be awarded to Plaintiff. A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: August 15, 2007