UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL D. CROSS, <br>     Plaintiff, <br> <br> v. <br> <br> G. WAYNE CLOUGH, Secretary, <br> Smithsonian Institution, <br>     Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 04-1253 (RMC) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Plaintiff respectfully files this Motion for partial summary judgment to dismiss Defendant's attempts to reduce Plaintiff's damages by invoking an "after-acquired evidence" defense.

**I.    MATERIAL FACTS NOT IN DISPUTE**

1. "[T]here is only one count remaining in this matter – Plaintiff's claim of retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*" Dkt. #106 (Court's Mem. Op., July 17, 2009).

2. Defendant terminated Plaintiff's employment on April 12, 2002. Dkt. #9, ¶¶31 (Def.'s Mot. for Summ. Judg., Nov. 18, 2004).

3. On April 16, 2002, Plaintiff contacted an EEO counselor, and Plaintiff alleged that his termination was the result of retaliation for engaging in protected EEO activity. Dkt. #9, ¶¶32, 34 (Def.'s Mot. for Summ. Judg., Nov. 18, 2004).

4. Defendant has consistently asserted a defense of after-acquired evidence, arguing "Defendant has after-acquired evidence that would have precluded Plaintiff from being hired, or would have resulted in Plaintiff's termination from employment once discovered; and that, even

if [Plaintiff] could prove unlawful retaliation, would prevent his reinstatement to employment with the Smithsonian Institution, would limit any award of back pay and front pay, and would otherwise limit any relief awarded in this case." Dkt. # 114 (Def.'s Answer, p. 2).  See also, Dkt. #9, p. 6 (Def.'s Mot. for Summ. Judg., Nov. 18, 2004).

5. By December 2002, Defendant was aware of the after acquired evidence. Dkt. #9, ¶ 62.

6. In addition to pursuing relief under Title VII in this civil action, Plaintiff previously sought relief under the Whistleblower Protection Act ("WPA") before the Merit Systems Protection Board ("MSPB"). Ex. 1.

7. On September 7, 2006, an MSPB administrative judge issued an initial decision that granted Plaintiff's request for corrective action with respect to his WPA claim, including reinstatement. *Id.* at 43.

8. On May 9, 2007, the MSPB denied Defendant's petition for review of the administrative judge's initial decision. The Board ordered Defendant to cancel its termination of Plaintiff and to reinstate him to his position. Ex. 2.

9. Defendant reinstated Plaintiff effective May 27, 2007. See, Dkt. #96-2 at ¶90 (Def.'s Statement Of Genuine Issues And Response To Pl.'s Statement Of Material Facts Not In Dispute).

10. Defendant continued to employ Plaintiff between May 27, 2007, and November 2008. Ex. 3.

11. From May 27, 2007, through November 2008, Defendant was aware of the after acquired evidence.

12. Between May 27, 2007, and November 2008, Defendant could have proposed Plaintiff's termination. See, 5 U.S.C. § 7513.

13. Between May 27, 2007, and November 2008, Defendant did not propose Plaintiff's termination.

14. After reinstating Plaintiff, Defendant did not terminate Plaintiff's employment. See, Dkt. #96-2 at ¶92.

15. In November 2008, Plaintiff resigned from employment with Defendant. Ex. 3.

## II.   STANDARD FOR SUMMARY JUDGMENT OF A DEFENSE

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322, 106 S.Ct. 2548. To defeat summary judgment dismissing a defense, the defendant must make a showing sufficient to establish the existence of each element essential to that defense. U.S. v. Philip Morris USA, Inc., 327 F.Supp.2d 1, 7 (D.D.C. 2004) (citing Celotex, 477 U.S. at 322).

For the following reasons, the undisputed material facts regarding the Defendant's after-acquired evidence defense could not lead a trier of fact to find that Defendant would have fired Plaintiff. Accordingly, Plaintiff moves to have Defendant's after-acquired evidence defense dismissed as a matter of law.

### III. ARGUMENT

### A. Burdens and Method Of Proof When Defendant Asserts The After-Acquired Evidence Defense

Defendant seeks to invoke the "after-acquired evidence" defense clarified in <u>McKennon v. Nashville Banner Publishing Company,</u> 513 U.S. 352, 115 S. Ct. 879 (1995). The defense provides that if the employer terminates the plaintiff's employment for a discriminatory reason, the employee's damages may be reduced if the employer subsequently discovers evidence for which it would have terminated the plaintiff on other, purely legitimate grounds. <u>Shnidrig v. Columbia Mach., Inc</u>., 80 F.3d 1406, 1412 (9th Cir. 1996), *cert denied*, 519 U.S. 927 (1996). To prove this defense, the employer must show that the employee's alleged wrongdoing was so severe that the employer would have terminated him on those grounds alone. <u>McKennon</u>, 513 U.S. at 362-3. Defendant cannot present sufficient evidence for a reasonable fact finder to find in its favor and, accordingly, its attempt to invoke the defense must fail.

The burden to prove the after-acquired defense always rests on the employer. <u>McKennon</u> explains that to properly invoke the defense, the employer "must first establish that the wrongdoing was of such severity that the employee *in fact would have been terminated* on those grounds alone if the employer had known of it…." 513 U.S. at 362-363 (emphasis supplied). <u>McKennon</u> also specifies that "the employee's wrongdoing becomes relevant…. to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." <u>McKennon</u>, 513 U.S. at 362.

To preclude or limit damages because of after-acquired evidence, "the employer has the burden of proving that the evidence reveals misconduct for which it '*would* have discharged **any** employee,' not simply for which it *could* have done so." <u>Mohave Elec. Cooperative v. Nat'l</u>

4

Labor Relations Bd., 206 F.3d 1183, 1192 (D.C. Cir. 2000) (italics in original; bold provided). "McKennon places the burden of proof with respect to this issue on the employer, carefully articulating that the employer must establish not only that it *could* have fired an employee for the later-discovered conduct, but that it *would* in fact have done so." O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir. 1996) (emphasis in original) (citing Reed v. AMAX Coal Co., 971 f.2d 1395, 1298 (7th Cir. 1992)).

The employer must demonstrate that the wrongdoing was of such severity that it would have fired the employee on those grounds alone. Harris v. Chand, ADT, 506 F.2d 1135, 1139 (8th Cir. 1997); Sellers v. Mineta, 358 F.3d 1058, 1064 (8th Cir. 2004); Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106, 1108 (5th Cir. 1995). "Proving that the same decision would have been justified … is not the same as proving that the same decision would have been made." O'Day, 79 F.3d at 759-760, *quoting* Price Waterhouse v. Hopkins, 490 U.S. 228, 252 (1989).

**B.    Defendant's After-Acquired Evidence Defense Must Fail Because Defendant Did Not Try To Terminate Plaintiff's Employment When It Could Have**

The undisputed facts are fatal to Defendant's defense. Between May 2007 and November 2008, Defendant knew about the after-acquired evidence and asserted the after-acquired doctrine in this litigation.[1] Between May 2007 and November 2008, Defendant continued to employ Plaintiff while asserting the doctrine. During this time, Defendant could have initiated action to terminate Plaintiff's employment but chose not to. Accordingly, Plaintiff moves to have Defendant's after-acquired evidence defense dismissed as a matter of law.

---

[1] See, e.g., Dkt. # 61 (Def.'s Mem. in Opp. to Pl. Mot. To Strike as Moot Def.'s After-Acquired Evidence Defense, June 21, 2007); Dkt. # 63, (Def.'s Mot. to Limit Compensatory Damages with After Acquired Evidence, Jul6 6, 2007).

"[I]n post-McKennon cases, an employer's decision not to terminate a Title VII plaintiff would be dispositive" to show that the employer cannot meet its burden on summary judgment. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995). Accord Carr v. Woodbury County Juvenile Detention Center, 905 F. Supp. 619, 625 (N.D.Iowa 2005) (noting that Microdyne concluded that if the employer does not subsequently fire the employee, "the employer would not be able to meet the 'would have fired' standard.").

Knowing about the after-acquired evidence, Defendant continued to employ Plaintiff through November 2008. Defendant did not act on known information which, it contends, warrants Plaintiff's termination. These facts preclude Defendant from further pursuing the after-acquired defense. Defendant did not commence action to fire Plaintiff when it could have; therefore Defendant cannot present sufficient evidence for a jury to conclude that Defendant *would* have terminated Plaintiff's employment. Because Defendant did not take action to terminate Plaintiff's employment when it could have, the Court should not permit Defendant to argue to the jury that it *would* have terminated Plaintiff's employment.

The operative facts of Russell are parallel to the case presented here. Ms. Russell applied for a job with Microdyne in 1990. 65 F.3d at 1232. In 1993, and while still employed at Microdyne, Russell filed suit, alleging harassment in violation of Title VII. 65 F.3d at 1234. "During discovery, Microdyne learned, allegedly for the first time" that Russell allegedly falsified parts of her application. 65 F.3d at 1234. Microdyne did not fire Russell. Microdyne moved for summary judgment, claiming that the after-acquired evidence was a complete defense to illegal discrimination. *Id*. The trial court granted Microdyne's motion in 1993. 65 F.3d at 1235. Russell appealed to the Fourth Circuit.

While Russell's appeal was pending, the Supreme Court issued its decision in McKennon, identifying the employer's burdens under the after-acquired evidence doctrine. Eight months later, the Fourth Circuit issued its decision in Russell. Russell noted that "McKennon dealt with after-acquired evidence in a wrongful termination case. In this case, Russell did not suffer any immediate negative employment decision after Microdyne's alleged discovery of her supposed falsehoods." 65 F.3d 1239.

In Russell, as here, the employer continued to employ the employee while knowing about the after-acquired evidence. In Russell, as here, the employee worked for the employer while the employer asserted the after-acquired evidence defense. In Russell, as here, the employee did not suffer a negative employment decision as a result of the employer's discovery of the after-acquired evidence. "Absent such a negative employment decision premised upon evidence of wrongdoing, the [after-acquired] **defense cannot apply and the remedies available are not curtailed in any way**." Russell 65 F.3d at 1239 (emphasis supplied). The operative facts of Russell are identical to the undisputed material facts presented here. Because Defendant did not try to take a negative employment decision against Plaintiff when it could have, Plaintiff's remedies cannot be limited.

Russell noted that when Microdyne learned the after-acquired evidence, it did not have the benefit of the Supreme Court's teachings in McKennon. Accordingly, the Russell court considered Microdyne's legal position in light of the law as it existed pre-McKennon and post-McKennon.

Russell recognized that when Microdyne asserted its defense, "the availability of this defense was not established." Id., at 1239. Only because the law had not yet established the defense, the court considered Microdyne's efforts to assert its after-acquired evidence defense.

7

Microdyne argued that it could not fire Ms. Russell because it feared a subsequent reprisal claim. Russell explained that after McKennon, the employer's fear of subsequent reprisal claims may not present a viable alternative to meeting the standards set forth under the McKennon test. Here, Defendant has had the benefit of McKennon; therefore, Defendant is not entitled to assert its arguments as if McKennon did not exist.

Russell stated that "in post-McKennon cases, an employer's decision not to terminate a Title VII plaintiff would be **dispositive** on this issue."  Id., at 1239 (emphasis supplied). McKennon's teachings, confirmed by Russell, are so clear and unequivocal that no employer can retain an employee while simultaneously arguing that it "would have" fired the employee.

## IV.     CONCLUSION

Plaintiff respectfully requests that the Court reject Defendant's defense of after-acquired evidence.  For the reasons identified above, the disputed material facts demonstrate that Defendant cannot present evidence that it *would* have terminated Plaintiff's employment in light of the after-acquired evidence.

February 25, 2009                                             Respectfully submitted,


                                                    ___/s/_____
KRISTIN D. ALDEN, D.C. BAR # 435227
Kraft Alden, PLLC
900 19th Street, NW
Suite 400
Washington, DC 20006
Tel:  202-783-1391
Fax:  202-783-1392
KAlden@KEA-law.com