UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL CROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 04cv1253 (RMC) |
| ) | |
| G. WAYNE CLOUGH, SECRETARY, ) | |
| SMITHSONIAN INSTITUTION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EVIDENCE**

Defendant, through counsel, hereby moves *in limine* to exclude the following as barred under Rules 401, 402, 403, 404(b) and 701 of the Federal Rules of Evidence: (1) Any proposed testimony of other individuals regarding their alleged personal experiences with discrimination and retaliation in the Garber facility of the Smithsonian ("me to" witnesses); (2) Any testimony or reference to the decision or award in Plaintiff's administrative complaint under the Whistleblower's Protection Act; (3) Any testimony or reference to an Inspector General report regarding the misuse of government resources by Ret. Gen. John Dailey, Tom Alison and William Reese; (4) any testimony or reference to the Acting Inspector General's August 21, 2006 Audit Report on Employee and Contractor Screening Measures; and (5) Any testimony or reference to any incidents occurring after Plaintiff's reinstatement to the Smithsonian, including the allegation that Plaintiff was constructively discharged.

In support of this Motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities. A proposed order is included.

        Respectfully submitted,

        RONALD C. MACHEN JR., D.C. Bar # 447889
        United States Attorney

        RUDOLPH  CONTRERAS, D.C. Bar # 434122
        Assistant United States Attorney


        _____
        DARRELL C. VALDEZ, D.C. Bar # 420232
        Assistant United States Attorney
        Judiciary Center Building
        555 4th St., N.W., Civil Division
        Washington, D.C.  20530
        (202) 307-2843

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL CROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 04cv1253 (RMC) |
| ) | |
| G. WAYNE CLOUGH, SECRETARY, ) | |
| SMITHSONIAN INSTITUTION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EVIDENCE**

I.   **FACTUAL BACKGROUND**

   A.   **Plaintiff's Claim**

The sole surviving claim in this case is that of retaliatory discharge in violation of Title VII of the Civil Rights Act. Plaintiff claims that his federal probationary employment with the Smithsonian Institution's National Air and Space Museum (NASM) from April 23, 2001 to April 12, 2002, as a GS-9 museum specialist was not continued because he allegedly spoke out against sexual harassment of a female co-worker. Plaintiff's other claims were dismissed by the Court's orders issued September 29, 2006 (dismissing claims of hostile work environment and retaliatory negative references), and August 15, 2007 (dismissing constitutional claims). This matter is scheduled for trial on June 21, 2010.

   B.   **Facts Regarding Testimony and Evidence**

      1.   **The "MeToo" Witnesses At Issue**

Other employees of the Smithsonian filed discrimination or retaliation claims against Tom Alison, William Reese, and John Dailey and may be called by Plaintiff to testify regarding

their claims:

Robert McLean filed an informal EEO complaint on April 4, 2003, alleging that he was retaliated against for engaging in protected EEO activity when (1) he was not selected for a team leader position; (2) he was asked to provide a list of his daily work activities; and (3) he overheard William Reese ask how he could fire McLean for filing an EEO complaint. Def. Exhibit 1. McLean was never fired. On May 29, 2003, McLean received a Notice of Final Interview, which notified him that he had 15 days from the date of receipt of the Notice to file a formal EEO complaint. However, McLean waited until June 14, 2003 to file his administrative complaint for retaliation. Accordingly, his complaint was dismissed at the outset for failing to timely file within the specified deadlines.

Bayne Rector initially contacted the EEO on April 3, 2003, alleging that Tom Alison failed to take any action when Rector reported that another employee held a time card in front of Rector's face and stated, "is that good enough for you, asshole." Exhibit 2. Rector alleged that Alison responded that he "did not give a rat's ass" about Rector and accused him of lying. Like Robert McLean, Rector was never terminated from employment. Although Rector timely filed a formal EEO complaint alleging retaliation, that administrative complaint was dismissed for failure to state a claim because he failed to allege any conduct that rendered him "aggrieved." Neither Rector nor McLean appealed the dismissals, nor did they ever file a civil action.

Heather Hutton filed a formal EEO complaint against the Smithsonian alleging discrimination by Tom Alison, William Reese, and John Dailey after her employment was terminated. Exhibit 3. During the administrative phase of the matter, however, Ms. Hutton settled her complaint with the Smithsonian in a confidential settlement agreement. No finding of

2

liability was ever made in that matter.

    **2.    Plaintiff's Whistleblower's Protection Act Claim.**

Concurrently with the present Title VII action, Plaintiff filed an administrative complaint under the Whistleblowers Protection Act (WPA) before the MSPB in 2005. In that WPA complaint, Plaintiff alleged that he engaged in conduct protected by the WPA, including when he complained about drugs in the workplace, managers using government time, tools and resources for personal use, and managers misappropriating government property for personal business. On September 7, 2006, an administrative judge issued an initial decision that granted Cross's request for corrective action, including reinstatement and an award of back pay. The MSPB administrative judge explicitly found that Cross "established that his protected whistleblowing disclosure was a contributing factor in his termination." On May 9, 2007, the MSPB denied the Smithsonian Institution's petition for review of the administrative judge's initial decision and ordered Plaintiff's employment to be reinstated and awarded Plaintiff back pay, consequential damages and attorney's fees.

    **3.    The Inspector General Report Regarding the Misuse of Government Resources**

The Office of Inspector General (OIG) began an investigation in July 2002 in response to allegations that John Dailey, Director of NASM, Thomas Alison, Chief Collections Division, NASM, and William Reese, Chief, Preservation and Restoration Unit, NASM, engaged in illegal or unethical activities. These allegations were not made by Cross, and the investigation was not initiated or conducted in response to any allegation or disclosure by Cross. See Affidavit of IG Ritt (Exhibit 4). The OIG issued a report on April 30, 2003, that concluded that Dailey, Alison, and Reese violated the Institution's Standards of Conduct. According to the Report, "[t]hose

violations primarily involved personal use of Institution property, materials, and labor." The Report specifically stated that the OIG did not investigate allegations of discrimination "due to an on-going investigation by the Institution's Office of Equal Employment and Minority Affairs."

### 4.     The Acting Inspector General's August 21, 2006 Audit Report on Employee and Contractor Screening Measures

On August 21, 2006, the Acting Inspector General issued an Audit Report on Employee and Contractor Screening Measures. The Report reviewed the Smithsonian's employment screening procedures for 1,903 employees from October 1, 2003 to April 30, 2005. The Report found that 26 employees had significant suitability issues such as convictions of arrest for theft, drug use and distribution, or assault and battery. The Report further found that the Smithsonian's Office of Protection Services did not maintain any records to indicate that these suitability issues were properly adjudicated, and that, except for one case, the Office of Human Resources was not made aware of these suitability issues. Finally, the report found that of those 26 employees, 13 were still working at the Smithsonian, while 13 were removed or resigned from their positions due to performance or conduct problems. The Report recommended that the 13 employees still working at the Smithsonian should be re-evaluated to determine whether they pose a "risk."

### 5.     Post-Reinstatement Facts and Allegations

In compliance with the order of the MSPB in the whistleblower retaliation matter, Plaintiff was reinstated on May 27, 2007. Plaintiff delayed his return to the workplace until July 31, 2007, and then left work again on August 31, 2007, after just one month on the job. He did not return to the Smithsonian again until February 19, 2008, apparently for the purpose of taking administrative leave for three days of depositions on February 20, 21, and 29, 2008. Despite the fact that the leave granted was for three days only, Plaintiff failed to report back for work.

Instead, Plaintiff used annual leave, sick leave, FMLA leave, and leave without pay until he resigned on November 5, 2008.

On December 15, 2008, Plaintiff sought to amend the complaint to add an allegation of "constructive discharge" and to request equitable relief beyond that awarded by the MSPB, including "front pay." Dkt. No. 102. Plaintiff alleged the pre- and post-reinstatement treatment[1] by the Smithsonian exacerbated his pre-existing mental condition and rendered him unable to work in any building or office of the Smithsonian. Id. Defendant opposed the amendment, noting that the proposed amendment was untimely, and further pointing out that neither Alison nor Reese were in the Plaintiff's chain of supervision upon his return to the Smithsonian, and that Plaintiff has not alleged that any of these men directly supervised him or that any of them directed action against him. Dkt. No. 104. This Court denied the motion to amend, finding that any attempt to add clams arising after his termination was untimely and unduly prejudicial to the Defendant and that the proposed amended complaint failed to allege any facts beyond that set forth in the original complaint. Dkt. No. 106 at 3-4.

## II.     ARGUMENT

The Court should exclude all testimony by, and evidence related to, the matters set forth above. Such evidence is irrelevant to the issues in this case and is likely to confuse the issues, mislead the jury, require "mini-trials" on other claims of discrimination/retaliation or whistleblower activity, and unfairly prejudice Defendant.

### A.     The Testimony and Evidence Should Be Excluded For Lack of Relevance

The Federal Rules of Evidence call for the admission only of "relevant evidence." See

---

[1] See id. at 2-3 n.5.

Fed. R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Fed. R. Evid. 401; United States v. Carter, 522 F.2d 666, 685 (D.C. Cir. 1975).

Equally important, the Federal Rules also provide for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [the likelihood of] misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Unfair prejudice has been defined as an undue tendency to suggest a decision on an improper basis, commonly an emotional one. Wright & Graham, Federal Practice and Procedure: Evidence § 5209. Confusion of issues generally occurs when the proffered evidence has a tendency to lead to litigation of collateral issues. See e.g., Caldera v. Eastern Airlines, 705 F.2d 778 (5th Cir. 1983). The danger that jurors will consider testimony for an improper purpose, e.g. propensity, should be a major factor in assessing whether certain evidence is admissible.

    **1.**    **Plaintiff's Whistlblower's Claim and the Inspector General Report Regarding the Misuse of Government Resources**

To the extent that Plaintiff intends to introduce any evidence or testimony regarding the administrative findings and resolution of his whistleblower's complaint or of other whistlblower complaints by any other employee regarding the misuse of government resources by Smithsonian supervisors, this case is <u>not</u> about the Smithsonian's management of its resources. Any such testimony about the result of his whistleblower's claim or an OIG investigation will shed no light on Plaintiff's claims of retaliation for Title VII protected activity. Thus, to the extent that Plaintiff may attempt to commingle or weave in a whistle-blower type allegation with his Title

6

VII claim, or indeed, simply try to disparage his former supervisors through testimony regarding the findings of the Inspector General or the administrative judge, he should be precluded from doing so. Such testimony will undoubtedly mire the trial on collateral matters that are assuredly prejudicial and might ultimately be confusing to the jury - leading the jury to impermissibly conclude that the Smithsonian's actions as related to its resources has some relevance to Plaintiff's Title VII claim when they simply do not. See, e.g. Jamil v. Secretary, Dep't of Defense, 910 F.2d 1203, 1207 (4th Cir.1990) ( "Title VII is not a general 'bad acts' statute; it only addresses discrimination on the basis of race, sex, religion, and national origin, not discrimination for whistleblowing.").[2]

### 2. The Acting Inspector General's August 21, 2006 Audit Report on Employee and Contractor Screening Measures

To the extent that Plaintiff attempts to introduce or elicit testimony regarding the Acting Inspector General's Audit Report on Employee and Contractor Screening Measures, neither the Report, nor its findings are relevant to this matter. While Plaintiff may argue that the Report is probative because it makes a descriptive reference to a former employee who sounds a lot like Plaintiff,[3] there is no indication that the person described is the Plaintiff. Notably, this Report

---

[2] Of course, Defendant understands that some allegations regarding his supervisors' conduct is intertwined with his alleged protected Title VII activity. Although these allegations are irrelevant and have no bearing on the present matter, Defendant intends to address those during the testimony or in closing argument by reminding the jury that the sole issue before them is the Title VII protected speech, and that those other allegations involve the protections from another statute, and are addressable in another forum on another date.

[3] Specifically, the Report describes an employee "who had access to collections who had been convicted of a drug offense and was terminated from previous federal employment for certifying false statements." The Report states that although the employee was terminated before his background investigation disclosed his criminal history, he might not have been hired as a permanent employee had the Smithsonian known about his past conduct.

7

reviewed actions taken during the time period of October 1, 2003 to April 30, 2005. Plaintiff's employment was terminated on April 12, 2002 – over one year prior to the review period. Thus, the Report provides no indication as to the security procedures, or lack thereof, at the time Plaintiff was employed at the Smithsonian. In addition, although the Report indicates that it the Smithsonian would not have hired these employees had it known of their backgrounds, it makes no statement or finding as to Plaintiff's "suitability" for employment. Accordingly, it provides no relevant evidence as to whether or not Plaintiff would have been fired at the time his after-acquired criminal and deceptive conduct was discovered.

### 3.     Post-Reinstatement Facts and Allegations

Finally, any post-reinstatement allegation as to his treatment at the Smithsonian is irrelevant to the present matter because neither Tom Alison nor William Reese were in the Plaintiff's chain of supervision upon his return, and because Plaintiff has never alleged that any of these men directly supervised him or otherwise directed action against him after his reinstatement. Moreover, Plaintiff's complaint is limited solely to the events leading up to his termination on April 12, 2002.[4] Significantly, the only post-reinstatement fact that is admissible (for the purpose of limiting Plaintiff's claim of prolonged mental distress) is the fact that Plaintiff's employment record has been changed to reflect that he resigned his position with the Smithsonian. Accordingly, all other allegations are not relevant and should be excluded.

---

[4] Likewise, all allegations regarding those counts from the original complaint and the first amended complaint that were dismissed at the outset of this matter are irrelevant, nor was any discovery taken into those allegations because they were no longer applicable to this case.

8

**B.     The Prejudice from Admitting "Me Too" Testimony Vastly Outweighs The Purported Probative Value**

Even assuming, *arguendo*, that the testimony regarding the Plaintiff's whistleblower's complaint and/or the other testimony referenced above has some marginal relevance to Plaintiff's claim, the testimony, along with the testimony from other employees who have axes to grind against the Smithsonian, should be excluded under Federal Rule of Evidence 403. That rule provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Fed. R. Evid. 403. In this case, virtually every one of these considerations counsels strongly against admission of this testimony.

As a general matter, courts have excluded "me too" evidence, recognizing in many different contexts that its minimally probative value is far outweighed by its prejudicial effect. "Trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial, but only slightly relevant." Reid v. National Linen Service, 182 F.3d 918 (unpublished table decision), 1999 WL 407463 at **7 (6th Cir. Jun. 2, 1999); see Schrand v. Federal Pacific Electric Co., 851 F.2d 152, 156 (6th Cir. 1988). The determination as to whether "me too" testimony is sufficiently more probative than unfairly prejudicial in a particular case is "fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint v. Mendelsohn, 522 U.S. 379, 388 (2008).

More particularly, courts have closely scrutinized the connection of the proposed witness's testimony to the case at hand -- excluding the evidence, for example, where the type of

9

adverse employment action was not the same, where the alleged victims of discrimination had different grades, titles or qualifications, or where the type of alleged discrimination (i.e., sex, race, handicap, etc.) was different for the plaintiff and the proffered witness. See Haskell v. Kamen Corp., 743 F.2d 113, 121 (2d Cir. 1984) (other employee testimony "definitely should have been excluded by the district court in accord with Fed. R. Evid. 403" and "even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age"); Goff v. Continental Oil Corp., 678 F.2d 593, 596-97 (5th Cir. 1982); Rauh v. Coyne, 744 F. Supp. 1181, 1183 (D.D.C. 1990).  In Schrand, for example, the Sixth Circuit reversed a jury verdict in favor of a Title VII plaintiff on the grounds that the district court should not have admitted evidence of alleged discrimination against coworkers.  The plaintiff there was a sales engineer for a national company who complained of age discrimination, and sought to introduce the testimony from two other sales engineers in other regions of the country who were told that they had been terminated because of their age.  The district court admitted the evidence, but the court of appeals ruled that it was irrelevant.  In doing so, it relied upon the important differences between the facts of the plaintiff's case and the facts of the witnesses' cases.  See Schrand, 851 F.2d at 156.

    Judged against these standards, the probative nature of testimony from these individuals concerning their own perceptions that they were the victims of discrimination or retaliation is greatly outweighed by the prejudicial effect.  Defendant expects that they will testify about their own claims against the Smithsonian alleging various acts of discrimination or retaliation.  However, Robert McLean's initial contact with the EEO was not initiated until April 4, 2003, and Bayne Rector's initial contact with the EEO process was April 3, 2003 - almost one year after

Plaintiff's termination on April 12, 2002. Moreover, unlike Plaintiff here, neither Rector nor McLean were ever terminated from employment. Indeed, Rector's complaint was dismissed at the initial stage of the administrative process for failing to state a claim, as the conduct complained of did not render him "aggrieved," the EEOC's standard for stating an adverse action. Additionally, Robert McLean's administrative complaint for retaliation was dismissed at the outset for failing to timely file within the specified deadlines. Neither witness appealed the dismissal. Heather Hutton settled her complaint with the Smithsonian in a confidential settlement agreement.

Whether these witnesses believe themselves to have been discriminated or retaliated against in their own employment situation has no bearing whatsoever on the Plaintiff's retaliation claim that remains for trial here. The patent irrelevancy of their proposed testimony is all the more supported by the fact that (1) Plaintiff's discrimination claims have been dismissed and any claim of discrimination no longer remains at issue, (2) neither McLean nor Rector alleged that Gen. John Daily took action to retaliate against him/her, and (2) none of the witnesses recovered a judgment or other finding of discrimination or retaliation. Thus, their testimony is not helpful to an understanding of the claims in this case, but only provides an opportunity for these other individuals to air their own grievances. See Holbrook v. Reno, 196 F.3d 255 (D.C. Cir. 1999) (requiring that all of the relevant aspects of the employment situation be the same) (*citing* Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995)); Phillips v. Holladay Prop. Services, 937 F. Supp. 32, 37 (D.D.C.1996) (the individual with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating

11

circumstances that would distinguish his conduct or the employer's treatment of [him] for it.").

Additionally, permitting the testimony of these me-too witnesses would also contravene Rule 404(b), which proscribes the admission of other "bad acts" in order to show action in conformity therewith. See Fed. R. Evid. 404(b). The rationale for eliciting such testimony is to suggest to the jury that if the agency may have discriminated or retaliated in other instances, they should conclude that there was discrimination here. Rule 404(b) specifically proscribes this kind of evidence. This case should not be permitted to turn into a general referendum on whether the Smithsonian is a good employer, or simply sully the defendant by putting on witnesses who will complain about real or perceived mistreatment in their employment. The proof at trial should address the facts surrounding Plaintiff's claim that he engaged in protected Title VII activity and whether he was retaliated against for that activity. The proposed "me-too" witnesses are entirely irrelevant to this inquiry.[5]

Finally, because no complaint by other employees reached the hearing stage or was otherwise resolved on its merits, admission of "me too" testimony would cause a significant and

---

[5] The testimony should also be excluded under Rule 701 of the Federal Rules of Civil Procedure. Rule 701 provides that witness testimony in the form of an opinion "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under this rule, "the opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or observation – for example, a witness' opinion that a person with whom he spoke was drunk, or that a car he observed was traveling in excess of a certain speed." United States v. Marshall, 173 F.3d 1312, 1315 (11th Cir. 1999); see also, McCarrick v. New York City Off-Track Betting Corp., No. 91 Civ. 5626, 1995 WL 261516 (S.D.N.Y. May 3, 1995) (opinion testimony of third party witnesses regarding their own allegations of discrimination was properly excluded since the opinions were merely legal conclusions "that would not be helpful to the trier of fact's clear understanding of the witness testimony."); Perkins v. Marriott International Inc., 945 F. Supp. 282, 287 (D.D.C. 1996)(Testimony which amounts to little more than "choosing up sides" can be excluded for lack of helpfulness.)

unnecessary lengthening of the trial, thus constituting an "undue delay" and "waste of time." Defendant will be required to put on evidence explaining the particulars of the other complaints and the lack of any evidence of discrimination/retaliation and the non-discriminatory or non-retaliatory reasons for their treatment. Consequently, what started as one trial could ultimately become multiple trials, which is precisely why courts are typically highly reluctant to admit testimony from witnesses whose sole purpose is to talk about their own discrimination claims. See Ramos-Melendez v. Valdejully, 960 F.2d 4, 6 (1st Cir. 1992) (in employment discrimination action, the exclusion of testimony of other employees about their pending suits was proper under Rule 403, since the admission of the testimony would require that their cases be tried as well); Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989). Moreover, even if their own individual claims were fully discredited or explained away by the Smithsonian at trial, the mere fact that other employees came forward to testify against the Defendant would serve only to suggest to the jury that these individuals felt "wronged." Such a vague inference, untied to factual evidence, is precisely what Rule 403 is designed to avoid.

## CONCLUSION

The evidence at trial should be limited to that relevant to the one specific claim that remains in this case. Plaintiff should not be permitted to expand the case into one involving instances of alleged discrimination against other employees. Nor should he be allowed to transform this case into a general inquiry into the Smithsonian's treatment of its employees.

Accordingly, Defendant respectfully requests that the Court grant its motion *in limine* and bar, at trial, the evidence discussed above.

        Respectfully submitted,

        RONALD C. MACHEN JR., D.C. Bar # 447889
        United States Attorney

        RUDOLPH CONTRERAS, D.C. Bar # 434122
        Assistant United States Attorney


        /s/Darrell C. Valdez
        DARRELL C. VALDEZ, D.C. Bar # 420232
        Assistant United States Attorney
        Judiciary Center Building
        555 4th St., N.W., Civil Division
        Washington, D.C.  20530
        (202) 307-2843

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL CROSS, | ) |
|     Plaintiff, | ) |
| v. | )    Civil No. 04cv1253 (RMC) |
| G. WAYNE CLOUGH, SECRETARY, SMITHSONIAN INSTITUTION, | ) |
|     Defendant. | ) |

## ORDER

Upon consideration of the Defendant's *in limine* Motion to exclude certain evidence, any opposition thereto, the record before this Court, it is this _____ day of _____, 2010

ORDRED that Defendant's *in limine* Motion is granted, and it is further

ORDERED that the following proposed testimony and/or evidence is excluded:

(1) Other individuals' alleged personal experiences with discrimination and retaliation in the Garber facility of the Smithsonian;

(2) The decision or award in Plaintiff's administrative complaint under the Whistleblower's Protection Act;

(3) The Inspector General report regarding the misuse of government resources by supervisors at the Garber facility of the Smithsonian;

(4) The Acting Inspector General's August 21, 2006 Audit Report on Employee and Contractor Screening Measures; and

(5) Allegations of facts or incidents occurring after Plaintiff's reinstatement to the Smithsonian, including the allegation that Plaintiff was constructively discharged.

_____
ROSEMARY M. COLLYER
United States District Judge