## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **MICHAEL D. CROSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-1253 (RMC)** |
| | ) | |
| **G. WAYNE CLOUGH, Secretary,** | ) | |
| **Smithsonian Institution,** | ) | **May 21, 2010** |
| | ) | |
| **Defendant.** | ) | |

_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE
_____

Plaintiff files this Opposition to the Defendant's Motion *in Limine* To Exclude Testimony and Evidence.

### A.    "Me Too" Evidence

<u>Salient Facts</u>

This case concerns Defendant's retaliatory termination of Plaintiff's employment. Plaintiff opposed perceived discrimination by William Reese (Plaintiff's supervisor) towards Heather Hutton (Plaintiff's co-worker). Thomas Alison (Reese's supervisor) recommended Plaintiff's termination. Gen. John R. Dailey, the Museum's Director, concurred with Mr. Alison's recommendation and terminated Plaintiff during his probationary period.

Ms. Hutton, like Plaintiff, protested Mr. Reese's discrimination. Mr. Alison recommended Ms. Hutton's removal (simultaneous to his recommendation on Plaintiff) and Gen. Dailey concurred. Ms. Hutton was removed the same day as Mr. Cross, also during her probationary period.

Bayne Rector and Robert McLean (Plaintiff's co-workers) also opposed Mr. Reese's discrimination; they supported Ms. Hutton and Plaintiff in their EEO complaints.  Mr. Rector and Mr. McLean were not probationary employees, but they assert that they personally observed Mr. Reese and Mr. Alison retaliate against them (i.e., Rector and McLean) because of their protected activities.

Argument

Robert McLean, Bayne Rector, and Heather Hutton are expected to testify to many matters, including their personal experiences working with Mr. Alison, Mr. Reese and, (in the case of Ms. Hutton), Gen. Dailey.[1]  The witnesses' testimony regarding their own claims of retaliation is admissible because these witnesses experienced retaliation from the same managers, for the same type of protected activity, during the same time period.

Defendant's Motion seeks to exclude, under Rule 403, all evidence from Defendant's employees, including Ms. Hutton, Mr. Rector and Mr. McLean, on whether Mr. Alison, Mr. Reese and Gen. Dailey retaliated.  See, Def. Mem. at p. 2, 9.[2]  Defendant's proposed order seeks to exclude the broader category of "[o]ther individuals' alleged personal experiences with discrimination and retaliation[.]"  (Def.'s Mot. *In Limine* to Exclude Test. and Evid., 17.)  This evidence is relevant and proper under the Federal Rules of Evidence and related case law, and therefore Defendant's motion should be overruled.

Testimony Is Relevant And Admissible Under Rule 401

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

---

[1] Plaintiff intends to introduce testimony on these points; Plaintiff does not seek to introduce records regarding discrimination or retaliation complaints filed by Rector, McLean or Hutton, but reserves the option to use such records to refresh recollection.  Plaintiff does not seek to introduce Hutton's confidential settlement agreement.

[2] Defendant's Motion references that the witnesses have not alleged that Gen. Dailey retaliated against them.

without the evidence." Fed. R. Evid. 401.  Relevance is determined in the context of the facts and arguments of a particular case.  *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. _____, 128 S.Ct 1140, 1147 (2008).  In order to prove his claim of retaliation under Title VII of the Civil Rights Act of 1964, as amended, Plaintiff must demonstrate (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

Ms. Hutton, Mr. Rector and Mr. McLean are expected to testify to facts that are probative of these elements.  Each witness has knowledge of Plaintiff's protected activity and is expected to testify to Plaintiff's opposition to acts of sex discrimination and harassment by Reese and Alison.  Furthermore, these witnesses are expected to testify as to the causal nexus between Plaintiff's protected activity and his termination.

 The testimony of a similarly situated employee's own experience of discrimination may be relevant to establishing a discriminatory atmosphere.  *See Parker v. HUD*, 891 F.2d 316, 322 (D.C. Cir. 1989).  A witness's own experience of retaliation is probative as to whether an atmosphere of discrimination and retaliation existed.   Hutton, Rector and McLean had experiences of  reprisal by the same managers, during the same time period, and at the same facility.  Hutton experiences retaliation by Dailey, Alison and Reese; Rector and McLean experienced retaliation by Alison and Reese.  All three witnesses occupied similar positions; all three witnesses reported directly to Reese.

Moreover, the testimony expected from Ms. Hutton is not only probative but essential to Plaintiff's retaliation case.  Plaintiff's retaliation case is built on his participation in Ms. Hutton's discrimination claim and his opposition to further discrimination and retaliation against her.  Ms.

Hutton's testimony is necessary to provide the jury with the facts giving rise to Plaintiff's protected activity and to demonstrate that his perceptions of harassment and discrimination were reasonable.  Moreover, Ms. Hutton's testimony is particularly relevant and probative because, like Plaintiff, she was a probationary employee and, like Plaintiff, Defendant fired her during her probationary period.

<u>Testimony Is Not Barred by Rule 403 or Rule 404(b)</u>

Defendant argues that the testimony of any employees with "axes to grind" should be excluded under Rule 403 (Def.'s Mot. *In Limine* to Exclude Test. and Evid., 9) and Rule 404(b) (*id.* at 12).  Defendant refers to this evidence as "me too" evidence.  (*Id.* at 9.)

Evidence, if relevant, may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  In weighing the probative value against the danger of unfair prejudice of witness testimony in Title VII cases courts consider these factors: (1) proximity in time of other discriminatory behavior by the employer, (2) identity of the decision-makers, (3) similarity of treatment of the witness and the plaintiff, and (4) whether the witness and the plaintiff were otherwise similarly situated.  *Elion v. Jackson*, 544 F. Supp.2d 1, 7 (D.D.C. 2008).

The testimony of McLean, Rector, and Hutton concerns events that chronologically overlap Plaintiff's own experience.  These witnesses and Plaintiff were supervised by the same decision-makers: Reese, Alison, and Dailey.  All of these individuals were subjected to the same sorts of retaliatory acts as those committed against Plaintiff: verbal abuse, threats, and in Ms. Hutton's case, termination during her probationary period.  The witnesses and Plaintiff were also

similarly situated in that they all worked at the same location, the Garber Facility, performed similar work in restoring aircraft, and reported to the same chain of command.

Defendant erroneously seeks support in an unpublished Sixth Circuit opinion, *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152 (6th Cir. 1988.)  In *Schrand*, the circuit court held that the district court below had abused its discretion in admitting the testimony of defendant's former employees as to their age discrimination experiences that occurred in other divisions and regions than where the plaintiff worked and under different management.  *Schrand*, 851 F.2d at 155.  In contrast to the present case, the witnesses' whose testimony was excluded in *Schrand*, were under different decision-makers, and were not similarly situated in that they worked in different geographical regions and in different divisions of the employer's business.

Defendant's reliance upon other cases is equally unavailing.  None of Defendant's cases supports Defendant's assertions that the testimony here should be excluded.  *See Haskell v. Kamen Corp.*, 743 F.2d 113, 122 (2d Cir. 1984) (testimony by six of defendant's former officers who were terminated over the prior eleven years under different circumstances was more prejudicial than probative); *cf. Malarkey v. Texaco, Inc*., 983 F. 2d 1204, 1210 (2d Cir. 1993) (holding that *Haskell* does not apply when witness testimony is related to plaintiff's circumstances and within the same time frame).  In *Goff*, also cited by Defendant, the court properly excluded testimony of witnesses who did not work in the same division as the plaintiff. *Goff v. Continental Oil Corp.,* 678 F.2d 593, 596 (5th Cir. 1982).  In *Rauh*, a sex discrimination case, the district court granted a motion *in limine* to exclude evidence of past racial discrimination by the employer as more prejudicial than probative.  *Rauh v. Coyne*, 744 F.Supp. 1181, 1183 (D.D.C. 1990).  These cases stand for the proposition that evidence is admissible if it relates to the same managers (as here), occurred in the same division or offices (as here),

occurred during the same time period (as here), and involved the same type of discrimination (as here – i.e., retaliation for EEO activity).

Rather than addressing the factors reviewed by the courts, Defendant focuses on irrelevant factors. Specifically, Defendant explains that "(1) Plaintiff's discrimination claims have been dismissed and any claim of discrimination no longer remains at issue, (2) neither McLean nor Rector alleged that Gen. John Dailey took action to retaliate against him/her, and (2) [sic] none of the witnesses recovered a judgment or other finding of discrimination or retaliation.." (Def.'s Mot. *In Limine* to Exclude Test. and Evid., 11.)  As explained above, these are not the relevant factors to weigh when evaluating whether the evidence should be admitted. See *Elion*, 544 F. Supp.2d at 7 ("It is established that evidence of an employer's past *discriminatory* or *retaliatory* behavior toward other employees may be relevant to whether an employer discriminated or retaliated against a plaintiff.")

As case law and legal standards offer Defendant no support, this Court should make its own determination in balancing the probative value of the evidence against the danger of unfair prejudice by using the *Elion* factors.

Defendant's concern that if admitted, these witnesses' testimony will mislead or confuse the jury may be cured by a limiting instruction from the court. *See* Fed. R. Evid. 105.

Rule 404(b) prohibits evidence of other wrongs or bad acts for the purpose of proving conformity with the prior acts, i.e. propensity evidence. *See* Fed. R. Evid. 404(b).  Yet the rule also states other grounds for which evidence of prior bad acts is admissible. *Id*. So-called "me too" evidence has been admitted under these exceptions. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) ("The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of [the employer] to discriminate and retaliate."); *Ansell v. Green*

*Acres Contracting Co.*,, 347 F. 3d 515, 521 (3d Cir. 2003); *Elion*, 544 F. Supp.2d at 7 n.10 ("Such testimony does not run afoul of [Rule 404(b)] because that Rule explicitly contemplates the admission of 'other acts' evidence to show motive or intent.")  Testimony by McLean, Rector, and Hutton would not be offered for propensity, but for the purpose of proving the motive or intent to retaliate against Plaintiff on the basis of his protected activity.

Defendant also argues that the so-called "me too" evidence should be excluded under Rule 701, which limits the scope of lay opinion testimony.  (Def.'s Mot. *In Limine* to Exclude Test. and Evid., 12 n.5.)  Defendant does not state what opinions he expects the witnesses to offer.  Plaintiff does not expect McLean, Rector, or Hutton to testify as to opinions outside this rule's limitations.

Lastly, Defendant argues that the so-called "me too" evidence should be excluded because of "waste of time" and "undue delay" and the risk of creating "multiple trials."  As discussed above, McLean, Rector, and Hutton are expected to testify about facts that arise in the same time period and concern the same agents of the Defendant as Plaintiff's claim, so they are not expected to create new controversies for the parties to litigate.  Defendant cites to *Ramos-Melendez v. Valdejully*, for the proposition that admission of other employees' testimony would require trying these separate cases as well, but in the context of that case the proposed witnesses all had pending cases for discrimination against the same employer.  *Ramos-Melendez v. Valdejully*, 960 F.2d 4, 6 (1st Cir. 1992).  As Defendant has stated in his motion, neither McLean, Rector, nor Hutton have current claims against Defendant, so there is not the same danger of repeated litigation in this case as in *Ramos-Melendez*.  Every item of other-acts evidence presents a risk of a "mini-trial" in the sense that the evidence is raised and may be refuted by the opposing party, but if evidence of this nature were routinely excluded as "waste of

time" then there would be no purpose for the exceptions in Rule 404(b).  For this reason, "me too" evidence has been admitted in this district, despite a possible risk of delay.  *See e.g. Elion*, 544 F. Supp.2d at 7;  *Jones v. Washington Metro. Area Transit Authority*, 946 F. Supp. 1011 (D.D.C. 1996).   As stated above, the expected testimony of McLean, Rector, and Hutton is closely related to Plaintiff's claim, so this evidence is both highly probative and poses a lower risk of inquiry into truly collateral matters.

## B.      The MSPB Decision

Salient Facts

The Merit Systems Protection Board found that Defendant's termination of Plaintiff was motivated, in part, by whistleblowing retaliation in violation of 5 U.S.C. § 2302.  Defendant seeks to exclude all evidence regarding this decision, arguing that the evidence is irrelevant. Def. Mem. at 3, 6.

Defendant has asserted an "after acquired evidence" defense, claiming that even if its April 2002 termination of Plaintiff was illegal, it would have legitimately terminated Plaintiff in December 2002 because of evidence learned about Plaintiff at that time.  Because of the MSPB decision, Plaintiff was reinstated in 2007 and left voluntarily at the end of 2008.  During this time, Defendant had the opportunity to terminate Plaintiff using the "after acquired evidence" but did not.  As explained below, these facts are critical and must be submitted to the jury.  However, Plaintiff does not seek to admit *all* facts relating to his whistleblowing claim.

Argument

Plaintiff does not seek to enter the entire MSPB decision or the underlying allegations. Plaintiff seeks to admit the following evidence: that Plaintiff filed a whistleblowing claim at the Board; that Plaintiff was successful on his claim; that Defendant was forced to reinstate Plaintiff;

and the relevant dates.  Plaintiff will seek to admit a redacted copy of the Board's decision, reflecting these facts.  Plaintiff will also seek an instruction to the jury affirming this Court's March 11, 2010, Order, wherein the Court explained that even though Plaintiff was successful in his whistleblowing claim, that event would not impact his ability to prevail in a Title VII claim. (See, Dkt. 123 at 1-2, "Two wrongs do not make a right and a single action can, indeed, violate two separate statutes…. [Plaintiff] claims that the Smithsonian had two unlawful reasons for his termination: 1) his whistleblowing and 2) his Title VII protected activity.  Each is separately actionable.")

This evidence – that Plaintiff was reinstated pursuant to the Board's Order – is critical and central to Plaintiff's ability to counter Defendant's "after acquired evidence" affirmative defense.  Under this defense, Defendant bears the burden of demonstrating that because of the 2003 "after acquired evidence," it "would have" terminated Plaintiff's employment.  Where a defendant asserts that it "would have" fired the employee, the defendant cannot prevail if the defendant had the opportunity to fire the employee but failed to do so.  *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).

Because of the Board's decision, Defendant was forced to re-employ Plaintiff in 2007 and Plaintiff remained employed there until he resigned in late 2008.  During this period, Defendant could have, but did not, take any action to terminate Plaintiff's employment.  These facts demonstrate that Defendant did not avail itself of its opportunity to terminate Plaintiff.  Thus, the Board's decision, and Plaintiff's resulting reinstatement, are central to Plaintiff's rebuttal of Defendant's "after acquired evidence."

If the Board's decision were excluded, the jury would be left wondering how and why Plaintiff was working for Defendant in 2007 and 2008, when Defendant had fired Plaintiff in

2002.  Excluding this evidence will mislead and confuse the jury.  The jury may make a host of potential – and inaccurate – inferences to explain why Plaintiff was working for Defendant in 2007 and 2008.  Whatever those inferences may be, they would be inappropriate and wrong and prejudicial to either or both parties.  The jury must be given accurate evidence explaining that Defendant was legally forced to reinstate Plaintiff in 2007 – the jury cannot be allowed to think or assume or infer that Plaintiff's employment in 2007 and 2008 was anything else.

## C.      Post- Reinstatement Facts and Allegations

Defendant seeks to exclude evidence and allegations that after Plaintiff was reinstated, Defendant created a harassing environment.  Plaintiff concurs.[3]  This evidence should be excluded, as it is likely to confuse the jury and raise extraneous facts.  Plaintiff's post-employment work conditions are not relevant to either:  a) Defendant's motivation for the 2002 termination; or b) whether Defendant would have terminated Plaintiff in light of the after acquired evidence.  Therefore, Plaintiff agrees with Defendant that such evidence should be excluded.

Defendant concedes the admissibility that Plaintiff resigned from his position with Defendant in late 2008, but Defendant limits the relevance to demonstrating prolonged mental distress.  See, Def. Mem. at 8.  As explained above, Plaintiff's resignation in late 2008 is relevant also to the Defendant's after acquired evidence claim as well.

## D.      The 2003 IG Report Relating to Whistleblowing Claims

Plaintiff does not seek to admit the 2003 IG Report relating to his whistleblowing claims.

## E.      The 2006 Acting IG Audit Report Relating to Comparative Employees

---

[3] Plaintiff does *not* concur, however, with Defendant's allegation that Plaintiff attempted to amend his Complaint with a claim of constructive discharge.  See, Def. Mem. at 5.  Plaintiff did not amend to include a constructive discharge and Defendant should be precluded from making such an assertion at trial, as explained in Plaintiff's Motion *In Limine* (Dkt. # 129).

Salient Facts

Defendant claims, among other things, that the "after acquired evidence" shows:  a) that Plaintiff omitted and falsified employment documents in 2000 and 2001; b) that Plaintiff falsified employment documents in 1983; c) that these actions would have deemed Plaintiff "unsuitable" for employment; and d) that if Plaintiff were employed by Defendant, Defendant would have terminated Plaintiff for the falsifications and/or lack of suitability.

The 2006 Acting Inspector General (IG) Audit Report summarizes an internal audit of Defendant's practices and policies with regard to suitability reviews and background investigations.   The Audit Report demonstrates that Defendant did not fire many other employees whose employment records contained omissions/false information and/or when the records raised "significant suitability issues."  See, IG Report, attached, at p. 4.[4]

Argument

---

[4] Specifically, the Audit Report states, among other things:

> For example, we learned of a volunteer who had access to collections who had been convicted of a drug offense and was terminated from previous federal employment for certifying false statements. He eventually received a background investigation when he later became a Trust, and then a Federal employee. However, he was terminated before his background investigation disclosed his criminal history.  Had the Smithsonian known about the individuals' criminal record when he was a volunteer, he **might** not have been hired as a permanent employee.

IG Report at 10 (emphasis supplied)(attached).  The facts presented here mirror Plaintiff's facts.

The Audit reviewed Defendant's compliance with its own requirement to conduct background investigations on "all employees."  The Report reflects that in practice, Defendant failed to conduct background investigations on more than half of its employees. IG Report at 3. In those instances when a background investigation was conducted resulting in "significant suitability issues," those suitability issues were not properly adjudicated. IG Report at 4.  Mr. Voyles's Office of Protective Services concurred with this conclusion.  IG Report at 20.

The IG Audit sampled 128 background investigations of Defendant's employees and found that 26 (20%) of the background investigations raised significant suitability issues.  IG Report at 4, 11.  In only one of these 26 cases was the employee referred to the Office of Human Resources and terminated.  IG Report at 4, 11.  Of the 26 employees whose background investigations raised suitability issues, half (13 employees) were still working for Defendant when the OIG issued its Report, more than a year after the audit.  IG Report at 4.  Of the 13 employees who remain in Defendant's employ, "[a]t least 6 of the 13 are serving in positions that pose a risk to the Institution, and the remaining 7 should be re-evaluated to determine whether they post a risk."  IG Report at 4.

Defendant seeks to omit the audit report because it disproves Defendant's after acquired evidence claim.  To preclude or limit relief because of after-acquired evidence, "the employer has the burden of proving that the evidence reveals misconduct for which it '*would* have discharged **any** employee,' not simply for which it *could* have done so."  *Mohave Elec. Cooperative v. Nat'l Labor Relations Bd.*, 206 F.3d 1183, 1192 (D.C. Cir. 2000) (italics in original; bold and underline provided).  The Audit Report illustrates that many other employees engaged in similar conduct and that Defendant *did not* terminate those employees.

Plaintiff opposes Defendant's efforts to exclude evidence and testimony relating to the Audit Report; this Report is directly relevant to the issue of after acquired evidence and Defendant's argument that it would have terminated Plaintiff.  The Audit Report establishes that in multiple cases, Defendant did not terminate employees who were similarly situated.  The Audit Report demonstrates that Defendant cannot prove that it terminated Plaintiff's comparators.  Therefore, the Audit Report is critical to Plaintiff's ability to discredit Defendant's after acquired evidence claim.

Defendant claims that the Audit Report lacks relevance because it provides no "indication of the security procedures, or lack thereof, at the time Plaintiff was employed" with Defendant.  Def. Mem. at 8.  Defendant's argument is fatally flawed for two reasons.

First, Defendant bears the burden of showing that it **would have** terminated **any** employee similarly situated to Plaintiff.  The law does not limit this burden to employees working for Defendant the same day or month as Plaintiff – Defendant must have terminated "any" similarly situated employee.  *Mohave*, 206 F.3d at 1192.  Thus, because the Audit Report shows that Defendant failed to terminate several similarly situated employees, the Audit Report is probative and relevant to whether Defendant did terminate every similarly situated employee.

Second, the Audit Report references an employee who, like Plaintiff, was a volunteer; like Plaintiff, had access to a museum's collections; like Plaintiff, was convicted of a drug offense; like Plaintiff, was terminated from previous federal employment for certifying false statements; and, like Plaintiff, received a background investigation when he later became a Trust, and then a Federal, employee.  See, fn. 1 *supra*.  The Audit Report also explains *only* that Defendant "might" not have hired this individual if Defendant knew these things.  This evidence demonstrates that Defendant cannot meet its legal burden, because the Audit Report does not say that Defendant "would not have" hired, or "would have fired" the individual.  Id.  Whether the jury finds that the Audit Report is referring to Plaintiff or another employee who is remarkably similar to Plaintiff, there can be no question that the Report sheds light on how Defendant would have treated Plaintiff.

Defendant raised only relevancy concerns with respect to the Audit Report.  However, should Defendant present any arguments regarding hearsay, Plaintiff contends that the Audit Report is admissible as an exception to the hearsay rule under Rule 803(8), stating that "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report …" are not excluded by the hearsay rule, "unless the sources of information or other circumstances indicate lack of trustworthiness." Clearly, the activities of an Inspector General include just such audits and reports as the Audit Report exemplifies.  In the alternative, the Report is issued under a duty imposed by law, the Inspector General Act of 1978, which describes the duties of the Office of the Inspector General as: "to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of" each agency, 5 U.S.C.A. app. § 4(a)(1), and "to keep the head of [the agency] and

the Congress fully and currently informed," by means of semi-annual reports, "concerning fraud and other serious problems, abuses, and deficiencies relating to the administration of programs and operations financed by" the agency.   5 U.S.C.A. app. § 4(a)(5).   Thus, the report is admissible.

May 21, 2010                                              Respectfully submitted,


                                                              /s/ Kristin D. Alden
                                                          KRISTIN D. ALDEN, D.C. BAR # 435227
                                                          Kraft Alden, PLLC
                                                          2600 Virginia Ave., NW
                                                          Suite 512
                                                          Washington, DC 20037
                                                          Tel:  202-783-1391
                                                          Fax:  202-783-1392
                                                          KAlden@KraftAlden.com